UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SAMANTHA ALVERNAZ,

Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security

Defendant.

No. 2:16-cv-2169-EFB

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB") under Titles II of the Social Security Act. The parties have filed cross-motions for summary judgment. For the reasons discussed below, plaintiff's motion for summary judgment is denied and the Commissioner's motion is granted.

I.     <u>Background</u>

Plaintiff filed an application for Supplemental Security Income, alleging that she had been disabled since March 26, 2007. Administrative Record ("AR") 106-17. Sometime thereafter, her application was converted to a DIB application, which was denied initially and upon reconsideration. *Id.* at 48-57. On August 22, 2011, a hearing was held before administrative law judge ("ALJ") Daniel G. Heely. *Id.* at 23-45. Plaintiff was represented by counsel at the hearing, at which she and a vocational expert also testified. *Id.* On September 14, 2011, the ALJ issued a

1

decision finding that plaintiff was not disabled under 216(i) and 223(d) of the Act.[1] *Id*. at 10-18. The Appeals Council subsequently denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. *Id*. at 1-4. Plaintiff sought review in the United States District Court for the Eastern District of California, and on April 1, 2014, the court remanded the case for further administrative proceedings. *Id*. at 443-456.

On remand, another hearing was held before the ALJ on May 18, 2015.[2] *Id*. at 308-53.

/////

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

[2] A hearing was initially held on November 4, 2014, but it was continued to allow plaintiff an opportunity to submit additional medical records. AR 351-75.

Plaintiff appeared without representation. She testified at the hearing, as did a medical expert and vocational expert. *Id*. On August 10, 2015, the ALJ issued a decision, again finding that plaintiff was not disabled under sections 216(i) and 223(d) of the Act. *Id*. at 287-301. The ALJ made the following specific findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2012.

2. The claimant did not engaged in substantial gainful activity during the period from her alleged onset date of March 26, 2007 through her date last insured of December 31, 2012 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: an undifferentiated and mixed connective tissue disease (variously referred to in the record as fibromyalgia, myalgias, or arthralgias) and chronic fatigue syndrome (CFR) (20 CFR 404.1520(c)).

   * * *

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

   * * *

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except she can never climb ladders, ropes, or scaffolds, and can only occasionally climb stairs and ramps.

   * * *

6. Through the date last insured, the claimant was capable of performing past relevant work as a clerk typist or receptionist. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

   * * *

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 26, 2007, the alleged onset date, through December 31, 2012, the date last insured (20 CFR 404.1520(f)).

*Id.* at 289-300.

Plaintiff subsequently filed a written exception to the ALJ's decision, but the Appeals Council declined to assume jurisdiction.[3] *Id.* at 272-78. Accordingly, the ALJ's August 10, 2015 decision is the final decision of the Commissioner. 20 C.F.R. § 416.1484(d).

II. Legal Standards

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. Analysis

Liberally construed, plaintiff's motion for summary judgment argues that the ALJ erred by (1) rejecting the opinion of plaintiff's treating physician, (2) finding plaintiff's testimony not

---

[3] Once an ALJ issues a decision after remand from the district court, the plaintiff has 30 days to file exceptions with the Appeals Council, requesting the Appeals Council review the ALJ's decision. 20 C.F.R. § 416.1484(b). If the Appeals Council finds no basis for changing the ALJ's decision, it is required to issue a notice addressing the claimant's exceptions and explaining why no change is warranted. 20 C.F.R. § 416.1484(b)(2). "In this instance, the decision of the administrative law judge is the final decision of the Commissioner after remand." *Id*.

fully credible, and (3) failing to provide plaintiff a full and fair hearing. ECF No. 15 at 1-3.

### A. The ALJ Provided Legally Sufficient Reasons for Rejecting the Opinion of Plaintiff's Treating Physician

#### 1. Relevant Legal Standards

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining medical professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

#### 2. Background

On March 21, 2011, plaintiff's treating physician, Dr. Darrell Hansen, completed a Medical Report of Physical and Mental Work-Related Impairments. AR 234-38. Dr. Hansen diagnosed plaintiff with dyssomnia, depression, and arthralgia. *Id.* at 234. He noted that plaintiff's medications have reduced her symptoms, but that she remains unable to resume activities requiring greater than 30-60 minutes of physical or mentally challenging tasks. *Id.* It

5

was Dr. Hansen's opinion that plaintiff could lift and carry up to 100 pounds occasionally and 20 pounds frequently; sit for four hours in an eight-hour workday; stand for one hour in an eight-hour workday; walk for one hour in an eight-hour workday; constantly engage in grasping and fine manipulation; frequently balance; and occasionally climb, stoop, crouch, kneel, and crawl. *Id*. at 235-237.[4]

In November 2011, plaintiff underwent a comprehensive internal medicine evaluation, which was performed by Dr. Roger Wagner. *Id*. at 214-218. Plaintiff complained of vague mild pains in her back and neck, with worse pain in her hips. *Id*. at 214. She also stated that she plays volleyball two times a week for several hours, which causes her to feel somewhat tired with a few aches and pains the following day. *Id*. She also reported an unlimited walking capacity and the ability to sit for 60 minutes before needing to get up and move around. *Id*. She claimed that her primary problems included fatigue and tiring easily. *Id*. On exam, plaintiff was completely comfortable with no pain whatsoever while sitting. *Id*. at 215. She hopped out of her chair and onto the exam table without difficulty, easily pranced down the hall on tiptoes and walked back on heels without difficulty. She was also able to bend over to put on her socks without difficulty. *Id*. Dr. Wagner diagnosed plaintiff with fibromyalgia based on her reports that she had received that diagnosis. *Id*. at 217. Dr. Wagner noted, however, that plaintiff had "no tender spots consistent with fibromyalgia . . . ." *Id*. He further observed that plaintiff "appeared to have absolutely no difficulties whatsoever moving any joints. No pain whatsoever as far as I can tell on exam. She does not appear to have many findings consistent with fibromyalgia based on my objective findings today." *Id*. Based on the examination, Dr. Wagner opined that plaintiff had no functional limitations. *Id*.

Plaintiff underwent a second internal medicine consultation in July 2014, this one performed by Dr. Ritu Malik. *Id*. at 596-98. On exam, plaintiff had no cervical, thoracic, or lumbar spine point tenderness; no paravertebral muscle tenderness, no muscle spasm, crepitus, effusion or deformity. She also had no myofascial tender points. Plaintiff reported pain with

---

[4] Dr. Hansen also assessed mental limitations, but plaintiff does not challenge the ALJ's treatment of her mental impairments. *See* ECF No 15 at 1-4.

6

cervical and thoracolumbar lateral flexion, but she maintained full range of motion in all joints. *Id*. at 597. Findings were otherwise unremarkable. *Id*. Dr. Malik diagnosed plaintiff with reported fibromyalgia and reported chronic fatigue and opined that plaintiff had no functional limitations. *Id*. at 598.[5]

The record also contains the opinion of non-examining physician Dr. Lawrence Sherman, who testified at the May 18, 2015 hearing. Based on his review of record, Dr. Sherman opined that plaintiff could lift 50 pounds occasionally and 20 pounds frequently, sit for six hours in an eight-hour workday, and stand for six hours in an eight-hour workday. *Id*. at 328. He further opined that plaintiff should not climb ladders or scaffolds, but she does not otherwise have any postural, manipulative, or environmental limitations. *Id*.

### 3. Discussion

In assessing plaintiff's RFC, the ALJ gave reduced probative weight to Dr. Hansen's opinion. AR 297. The ALJ provided several reasons for rejecting the treating opinion.

First, the ALJ observed that only a portion of the medical source statement reflected Dr. Hansen's professional opinion, while other assessed limitations were merely recitations of plaintiff's own reports. *Id*. In his medical source statement, Dr. Hansen opined that plaintiff could continuously use her hands and fingers, stating that the opinion was based on the medical finding that plaintiff had normal dexterity. *Id*. Dr. Hansen also indicated that plaintiff had restrictions in walking, standing, and sitting, as well as postural limitations. *Id*. at 235-26. However, he stated that the medical findings supporting these limitations were "history from patient." *Id*. Moreover, in a progress note from the same date of medical source statement, Dr. Hansen wrote that he and plaintiff "discussed the largely subjective interpretation of her ability to

---

[5] Dr. Malik also completed a separate medical source statement, which generally reflects that plaintiff has no functional limitations. AR 599-604. However, on the last page of the form, Dr. Malik provided responses to nine "yes" or "no" questions that, if accepted at face value, would indicate that Dr. Malik believed plaintiff was severely impaired. *See* AR 604. For instance, some of the questions asked if plaintiff could perform activities such as shopping, ambulate without a wheelchair or crutches, walk on uneven surfaces, use public transportation, climb a few steps with a handrail, and care for personal hygiene. *Id*. In response to each question, Dr. Malik checked the "No" box. *Id*. As observed by the ALJ, the responses in this section were likely rendered in error. *Id*. at 298.

7

tolerate activities and anticipate that there will need to be a review by social security administration of her physical limitations before any lasting assessment can be provided." *Id*. at 251. The ALJ concluded that "[t]aken together with [Dr. Hansen's] medical source statement, this note in the progress notes indicates that Dr. Hansen did not feel confident in assessing [plaintiff's] physical limitations as either his or her perceptions, or perhaps both, were subjective." *Id*. at 297. The ALJ further stated that Dr. Hansen "felt more objective standards (such as a review of the claimant's physical limitations by this agency) would be needed before he could provide a 'lasting assessment.'" *Id*. Based on this evidence, the ALJ properly concluded that postural limitations and walking, standing, and sitting limitations were not based on Dr. Hansen's professional opinion as to plaintiff's actual function limitations. *See Macri v. Chater*, 93 F.3d 540, 544 ("[T]he ALJ is entitled to draw inferences logically flowing from the evidence").

Additionally, the ALJ observed the opinion in the medical source statement that Dr. Hansen' authored was inconsistent with Dr. Hansen's treatment notes. The ALJ noted that the treatment records documented plaintiff's ability to engage in various activities, such as coaching her children's sports teams, playing volleyball, and walking to the park, while containing only a few signs of pain, tenderness, and fatigue. An ALJ may reject a treating physician's opinion that is inconsistent with other medical evidence, including the physician's own treatment notes. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that contradictions between a treating physician's opinion and clinical notes are a proper basis for rejecting a treating physician's opinion).

Dr. Hansen's treatment notes document plaintiff's general complaints of pain and fatigue, with only minimal findings from examination. AR 193-98, 200-07, 240-251. Medical records from February, March, and April 2007 show multiple tender points corresponding with fibromyalgia, as well as tenderness along the intervertebral and paravertebral areas of the cervical and lumbosacral spine. *Id*. at 190, 193, 198. A March 2011 treatment also showed tenderness over the sacroiliac joint in January 2011. *Id*. at 249. But the remaining treatment notes typically provide only plaintiff's vital signs, without any findings from examination such as tenderness to

8

palpation, pain at trigger-point sites, or ongoing widespread pain. *See* SSR 12-2p. At best, the medical records consistently document plaintiff's subjective complaints of fatigue. However, they also demonstrate that plaintiff was encouraged to stay active and in fact engaged in a number of activities, including coaching soccer and basketball several nights a week, playing volleyball, walking to the park, and moderately exercising. *Id*. at 243; 245, 248, 249, 250. The activities documented in Dr. Hansen's treatment records, as well as the minimal findings from examination, contradict his opinion that plaintiff was significantly limited.[6]

Accordingly, the ALJ provided legally sufficient reasons for rejecting Dr. Hansen's treating opinion.

B. The ALJ Did not Err in Rejection Plaintiff's Testimony

1. Relevant Legal Standards

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of impairment, the ALJ may then consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. *See id.* at 345-347. The ALJ also may consider: (1) the

---

[6] In support of her motion, plaintiff submits two medical records that are not part of the administrative record. ECF No. 14. Pursuant to 42 U.S.C. 405(g), a court may remand a case to the Social Security Administrative for consideration of new evidence only where there is a showing that the new evidence is material and there is "good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." Plaintiff has failed to show good cause for not submitting the documents to the agency. Furthermore, the documents are not material as there is not a reasonable possibility that consideration of the documents would have changed the outcome of plaintiff's disability claim. *See Booz v. Sec'y of Health and Human Servs.*, 734 F.2d 1378, 1380-81 (9th Cir. 1984). The first record is a letter authored by Dr. Hansen stating that plaintiff "finds that remaining on a task more for [sic] than 30-60 minutes at a time is physically and mentally draining for her." ECF No. 14 at 3. This letter not only restates the opinion in the medical source statement completed by Dr. Hansen, it actually lends further support to the ALJ's finding that Dr. Hansen did not provide his own professional opinion as to plaintiff's limitations but instead recited plaintiff's own subjective opinion. *Compare* AR 234 to ECF No. 14 at 3. The second record shows that plaintiff established care with a Dr. Kearns on September 15, 2011 to obtain medication refills. ECF No. 14 at 5. It notes that plaintiff has possible fibromyalgia and notes complaints of pain in her knees, right hip, lumbar spine, and muscles. *Id*. The note is consistent with other medical records and consideration of this record is not substantially likely to change the decision in this case. Accordingly, there is no basis for remanding the case for consideration of the newly submitted evidence.

applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. *See Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n. 6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan*, 169 F.3d at 599.

### 2. Discussion

The ALJ summarized plaintiff's testimony and subjective complaints, but found that her statements regarding the severity of her impairments were not fully credible. AR 294-95. First, the ALJ observed that plaintiff's reported activities were inconsistent with her allegations of debilitating impairments. *Id*. at 295. An ALJ may discredit a claimant's subjective statements where she engages in activities that are inconsistent with her allegations of debilitating impairments. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); *see also Smolen*, 80 F.3d at 1284 (ALJ may rely on inconsistent testimony in assessing a claimant's credibility).

Despite her complaints of debilitating fatigue and pain, on numerous occasions she reported participation in various activities. In October 2008, she was "regularly coaching her daughter's basketball team and she will participate." *Id*. at 243; *see also id*. at 34 (testifying that

she coaches basketball for four to six hours a week). She also reported doing moderate exercise. *Id*. Two years later she reported coaching her child's soccer team three days a week and playing volleyball on another day of the week. *Id*. at 248. She also informed Dr. Wagner she plays volleyball two times a week for several hours. *Id*. at 214. She again reported playing volleyball in March 2011, although she stated that she plays less than one day a week due to increased hip pain. *Id*. at 174; *see also id*. at 151; 249. Plaintiff also alleged difficulty with prolonged sitting (*id*. at 37), but testified that she took a two-week road trip to Minnesota, requiring five or six days of driving (*id*. at 35). The ALJ reasonably concluded that plaintiff's reported activities were inconsistent with her subjective complaints.

In her motion for summary judgment, plaintiff disputes that she was able to play volleyball "with no difficulties." ECF No. 15 at 3. The record, however, does not substantiate plaintiff's current contention. Plaintiff also argues that she stopped coaching in early 2014 and that when she was coaching she spent most of her time sitting down. *Id*. at 3. Contrary to plaintiff's contention, medical records reflect that plaintiff participated in practices (*id*. at 243), and plaintiff even testified that coaching gave her "a little bit of exercise" (*id*. at 34). Moreover, plaintiff's contention that she stopped coaching in 2014, even if true, does not undermine the ALJ's findings. Plaintiff's date last insured was December 31, 2012, and the record reflects that plaintiff maintained the ability to coach during the relevant period.

The ALJ also discounted plaintiff's credibility because she made inconsistent statements about her symptoms. AR 295. As observed by the ALJ, plaintiff testified at the hearing that she experienced difficulty concentrating and staying on task. *Id*. at 38. Conversely, in her functional report she stated that she could pay attention as long as needed and that she follow written and spoken instructions "very well." *Id*. The ALJ properly relied on these inconsistent statements in finding that plaintiff was not fully credible. *Smolen*, 80 F.3d at 1283 (finding that an ALJ may rely on inconsistent statements in assessing a claimant's credibility); *Molina v. Astrue*, 674 F.3d 1104, 1112 (An "ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct.").

/////

11

Lastly, the ALJ found that plaintiff's subjective complaints were also not supported by the medical evidence of record. AR 295; *see Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). Although the medical records generally reflect complaints of pain, fatigue, and difficulty sleeping, they fail to document severe symptoms that would preclude work. *See id*. 243 (moderately exercising, coaching and participating in basketball); 248 (noting complaints of feeling tired but also coaching soccer three days a week, playing volleyball one day week, regularly walking to the park); 249 (continues to have pain but remains physically active, coaches, and plays volleyball); 250 (concerned about low energy but is maintaining physical activity). As noted by the ALJ, plaintiff's symptoms have been treated routinely with medication, as well as recommendations to remain physically active. *See, e.g., id*. at 203, 204, 250. Although plaintiff has been prescribed hydrocodone, her treatment record reflects that she only needs to use it "very sparingly." *Id*. at 245, 248, 249; *see also id*. at 316-17 (plaintiff testifying that she does not use hydrocodone often). The ALJ reasonably concluded that plaintiff's medical records fail to substantiate her claims of debilitating impairments, including severe pain and fatigue. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (where the ALJ's interpretation of the evidence is reasonable, the court may not second-guess the ALJ's findings).

Accordingly, the ALJ provided clear and convincing reasons for finding that plaintiff was not fully credible.

   C. <u>Plaintiff was Afforded a Fair Hearing</u>

Plaintiff claims that at the May 18, 2015 hearing, the ALJ interrupted her testimony and gave her the impression that she could not continue to "ask questions by sternly stating that the hearing was over, without asking whether [she] had more to contribute or not." ECF No. 15 at 2.

Plaintiff's contention is belied by the transcript of the hearing. The ALJ provided plaintiff an opportunity to explain her limitations and her daily activities. AR 316-24. The ALJ also assisted plaintiff in asking Dr. Sherman several questions. *Id*. at 328-40. In fact, the examination of Dr. Sherman concluded only after plaintiff stated she did not have any further questions. *Id*. at

40. The ALJ also provided plaintiff an opportunity to question the vocational expert, but plaintiff declined. *Id*. at 351. At the end of the hearing, the ALJ also provided plaintiff with addressed envelopes and held the record open for more than two weeks just in case plaintiff wanted to submit additional records. *Id*. at 351. Contrary to plaintiff's contention, the record reflects that the ALJ not only provided plaintiff an opportunity to present her case, but actively assisted her in doing so.

IV. Conclusion

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor and close the case.

DATED: March 31, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

13